NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA *vs.*
OHIO FARMERS INSURANCE COMPANY.

Suffolk.   December 6, 1926. — January 7, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Agency*, What constitutes.

In an action between two insurance companies, it appeared that the defendant had sold its business in New England to the plaintiff under a contract, which contemplated a continuance of the business with the least possible interruption and in substance provided that the defendant was to allow its agent to continue to use and issue policies in that company, pending the preparation and distribution to such agents of policies of the plaintiff company; that upon the issuance of such policies of the defendant company the risks automatically were to be reinsured by the plaintiff; that the premiums for such policies when turned in by the agents were to go to the plaintiff; that the premiums thereafter paid in were placed by one who continued to be general agent for the defendant in a bank account standing in his name as general agent, and afterwards were withdrawn by him for his own purposes; that none of such sums ever were paid to the plaintiff. The defendant contended that the general agent in collecting and banking the premiums was acting for the plaintiff, that the amount which he deposited thus became the plaintiff's, and that therefore the defendant was under no further liability. Upon facts found by an auditor, the trial judge found that the general agent was not the agent of the plaintiff, and found for the plaintiff for the premiums collected. *Held*, that the findings were warranted.

CONTRACT.   Writ dated April 6, 1921.

In the Superior Court, the action was referred to an auditor. Material facts found by the auditor are stated in the opinion. The action then was heard by *Macleod*, J., without a jury, on the auditor's report alone. The judge denied a motion by the defendant that judgment be ordered for the plaintiff in the sum of $14.89 only, and found for the plaintiff in the sum of $4,350.28. The defendant alleged exceptions.

*T. H. Bilodeau*, for the defendant.

*V. J. Loring*, (*J. A. Brennan* with him,) for the plaintiff.

PIERCE, J.  This is an action of contract on an account annexed for certain sums of money, alleged to be owed by the defendant to the plaintiff.  The answer is a general denial and payment.  The case was referred to an auditor who found for the plaintiff for the amount claimed, with interest from August 7, 1920, on which date, as the auditor found, the plaintiff rendered to the defendant an account stated.

At the trial the only evidence was the auditor's report.  The defendant moved for judgment for $14.89, which it admitted it had received, had not credited to the plaintiff, and had not paid to the plaintiff in the accountings between them.  The judge denied the defendant's motion for judgment, found for the plaintiff in the aggregate amounts allowed by the auditor, with interest from August 7, 1920, and filed a "memorandum of findings and rulings as follows:"

"1.  As a part of the consideration for the purchase and sale of the business of the defendant company, the defendant agreed to continue the issuance of its own insurance policies for a limited period beyond June 11, 1919, and to collect the premiums thereon through its existing agency forces.  The agreement also provided for the immediate reinsurance in full by the plaintiff company of all risks covered by the policies so issued.

"2.  For the purpose of carrying out this agreement, H. E. Burns continued to be the general agent of the defendant company and as such received from the defendant's local agents the net amount of the premiums collected by them upon said policies and deposited the same in the Second National Bank of Boston to the credit of an account standing in the name of 'H. E. Burns, Gen'l Agt.'

"3.  This account was treated by all the parties — Burns, the bank and the officers of the defendant company — as being, and was in fact, the agency account of the defendant company and was neither the personal account of Burns nor the account of the plaintiff company.  Although Burns, from and after June 11, 1919, transacted certain insurance business as the general agent of the plaintiff company, I find and rule that, in the collection, receipt and deposit of the premiums aforesaid, he was not acting as an agent of the plaintiff

company but solely as the agent of the defendant company, acting within the scope of both his actual and apparent authority from the defendant company.

"4. Under these circumstances, as it appears that the general agent of the defendant company had knowledge of the plaintiff's claim to the proceeds of the said premiums, I find and rule that the question as to whether the officers of the defendant company had independent knowledge of the plaintiff's claim is immaterial.

"5. The facts disclose the collection and receipt by the defendant company of the premiums upon said policies issued at the ultimate risk and for the benefit of the plaintiff company, and established a legal duty upon the defendant company to pay the amount thereof to the plaintiff company. I also rule that the form of action in this case is appropriate for the recovery of such amount.

"6. The defendant's requests for rulings, so far as inconsistent with the findings and rulings herein made, are denied either because they are erroneous as matter of law, or because they ignore the agency relationship of Burns to the defendant company and rest upon the unfounded assumption that the moneys in question were paid in and received from an ordinary debtor as his personal funds to be applied to the liquidation of an antecedent obligation, or because they are otherwise immaterial in view of the findings herein made.

"7. I am therefore entering herewith a finding for the plaintiff in the aggregate amount found by the auditor with interest thereon from August 7, 1920, to the date hereof."

The defendant, being aggrieved by the denial of its motion for judgment, by the aforesaid memorandum of findings, and rulings, and by the failure to give its requests for rulings of law, duly filed a "statement of exceptions." The case is now before this court on a bill of exceptions thereafter filed and allowed.

We are of opinion that the findings of the auditor warranted the conclusion of fact found by the judge as also his rulings of law. Shortly stated, such findings are as follows: The plaintiff and the defendant corporations in 1919 were engaged in the general fire insurance business. On June 11

of that year, they entered into a contract whereby the defendant sold to the plaintiff its New England business.  The arrangement between the two companies contemplated a continuance of the business with the least possible interruption, and in substance was that the defendant was to allow its agent to continue to use and issue policies in that company, pending the preparation and distribution to such agents of policies of the plaintiff company; that upon the issuance of such policies of the defendant company the risks were to be automatically reinsured by the plaintiff, but the premiums for such policies when turned in by the agents were to go to the plaintiff.

As a part of this arrangement, the facts found by the auditor warranted a conclusion of fact that the defendant, after the sale of its business, continued to employ one H. E. Burns to make collection of premiums due from agencies on policies issued prior to June 11, 1919; as also to receive the premiums turned in by the agencies on policies which were issued by the defendant after June 11, 1919, in the name of the defendant but in the interest of the plaintiff.  After June 11, 1919, a large number of policies were issued on the signed blanks of the defendant company and were delivered to its agents.  The various agents who issued policies from time to time subsequent to June 11, 1919, sent checks and remittances for the net amount of the premiums called for by the policies to H. E. Burns, who before the contract was the general agent of the defendant and remained such for the purpose of receiving premiums after the contract.  These checks and remittances were made payable either to the defendant or to H. E. Burns as general agent.

On January 1, 1918, Burns had become the general agent of the defendant for the New England department, and as such had a general supervision of the agencies of the defendant throughout the New England territory.  On February 5, 1918, Burns opened an account with the Second National Bank of Boston, and signed a signature card.  This card was in evidence at the hearing before the auditor.  On it, at the top, was written "H. E. Burns, Gen'l Agt.," and at the bottom under the words "Introduced by" and

"Business," in the hand writing of Burns were the words "Ohio Farmers Ins. Co. of LeRoy, Ohio, New England Dept., . . . February 5, 1918." Subsequent to February 5, 1918, and down to his death in November, 1919, Burns used a printed form of check bearing in the left hand margin the following words: "Ohio Farmers Insurance Co. LeRoy, O. New England Department H. E. Burns General Agent 4 Liberty Square, Boston Mass." "Burns had a separate personal bank account."

The auditor finds as to the use of this bank account, as follows: "Mr. Burns used this account in which to deposit checks and receipts which came to him from the agents of the Ohio Farmers Insurance Company throughout New England. Checks of some of the agencies showing payment of premiums which passed into the hands of Mr. Burns and were by him deposited in above account would indicate that some of the checks were made payable to the Ohio Farmers Insurance Company and others were made payable to H. E. Burns, Gen. Agent. Checks made payable to the Ohio Farmers Insurance Company were indorsed prior to deposit in the above account by rubber stamp as follows, — 'Deposit to credit of Ohio Farmers Ins. Co. H. E. Burns, General Agent.' Checks which were payable to H. E. Burns, General Agent, were indorsed for deposit in exactly the same way. So that whether checks received by Mr. Burns were payable to him as General Agent or payable directly to the Ohio Farmers Insurance Company, they were deposited to the account in the Second National Bank and were indorsed for deposit by the use of the same rubber stamp."

For some weeks before Burns's death on November 19, 1919, he was unable to pay full attention to business matters. During this period checks, received from various agencies, so far as they were payable to the Ohio Farmers Insurance Company or to H. E. Burns, General Agent, were deposited in the Second National Bank to the credit of the account above described. On October 25, 1919, Burns drew on the account in the Second National Bank a check of $5,000, payable to his own order. This check was cashed over the counter by Mrs. Burns. There is no evidence as to what

became of this money, but the auditor finds it did not go to the defendant.

Prior to the death of Burns, it did not come to the attention of the officers of the defendant that the bank account in the Second National Bank stood on the books of the bank in the name of "Ohio Farmers Insurance Company, H. E. Burns, General Agent." The auditor finds respecting this that Burns introduced the above described account "to be used only for the deposit and withdrawal of funds connected with his general agency for the defendant and . . . except as to the check of $5,000 on October 25, 1919, the account was so used. The only checks deposited in such account in the Second National Bank were payable to the Ohio Farmers Insurance Company or to H. E. Burns, General Agent."

On April 27, 1920, the defendant company notified the bank that it desired to withdraw the balance of the account standing in its name and to its credit; and the bank remitted to the defendant such balance on April 29 and May 3, 1920. At the date of the withdrawal by the defendant there was due the defendant from Burns a sum in excess of $3,617.33, which was the amount so withdrawn.

On the auditor's report, the pertinent facts of which are above stated, the defendant contends that Burns, in the receipt of the premiums, was the agent of the plaintiff as well as of the defendant; that he could have paid either at his election; and that the money received by the defendant was rightly received in payment of a debt due to it from Burns. The answer to this position is that Burns was retained as agent of the defendant to collect and pay over to it the premiums paid on its policies, which it had contracted with the plaintiff to collect through its agents, and, after transmittal to the home office and the deduction of certain attending expenses, had further agreed to pay to the plaintiff. The obligation of the defendant, on receipt of the premiums on policies issued after June 11, 1919, to pay the plaintiff such premiums under the contract, stood no different whether the sums collected were paid to it directly or to Burns, whom it had appointed to receive such premiums in

its behalf.   The plaintiff was not concerned whether Burns kept separate and distinct accounts of the money received arising from premiums on policies issued before June 11, 1919, or afterward.   He was not its agent to collect, but was the agent of the defendant.   It was sufficient for it to show what sums on account of the policies issued by the defendant after June 11, 1919, were collected by the defendant, or its agents, under its contract to collect and pay to the plaintiff.

The voluminous requests for rulings were all based upon the false premises that Burns was not the agent of the defendant to receive the premiums on policies issued after June 11, 1919, but was the agent of the plaintiff.   The requested rulings therefore were not applicable to the facts found by the auditor or to the conclusion of fact found by the judge.

*Exceptions overruled.*